

TAX MAP NO.: 05A(07)13-002-0

After Recording Return To:
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

Prepared By:
RUTH RUHL, P.C. and
Co-Counsel, M. Richard Epps, P.C.

The maker of this instrument hereby certifies that the recording tax on hereon is derived in accordance with Section 58.1-803(D) or 58.1-809 of the Code of Virginia (1950) as amended.

_____ [Space Above This Line For Recording Data] _____

Loan No.: 0848130522
Investor Loan No.: 0100832226

FHA Case No.: 541-6039937

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 19th day of April, 2024, between KANDISE N THOMAS-HUMPHREY, AN UNMARRIED PERSON ("Borrower/Grantor") and *Servbank, SB ("Lender/Grantee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated June 29th, 2001, recorded June 29th, 2001, and recorded in Book/Liber N/A, Page N/A, Instrument No. 010003337, of the Official Records of PRINCE GEORGE County, Virginia, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 10906 SASSAFRAS DR, HOPEWELL, Virginia 23860,

The original loan amount was $88,301.00. The existing principal balance is $34,117.86. $5,770.02 will be added to the existing principal balance resulting in a new modified loan amount of $39,887.88.

The amount which is subject to mortgage registry tax is $0.00.

Abbreviated Legal Description: LOT 2, BLOCK 13, SEC 7, BEECHWOOD MANOR S/D, PRINCE GEORGE CO

Loan No: 0848130522

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF

    In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

    1.    As of July 1st, 2024, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $39,887.88, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

    2.    Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.875%, from June 1st, 2024. Borrower promises to make monthly payments of principal and interest of U.S. $262.03, beginning on the 1st day of July, 2024, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 6.875% will remain in effect until principal and interest are paid in full. If on June 1st, 2054, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

    3.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

    4.    Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

    (a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

    5.    Borrower understands and agrees that:

    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

Loan No.: 0848130522

    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

    6.    If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

    7.    Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in

Loan No.: 0848130522

accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Loan No.: 0848130522

    Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

Date  5/13/2024      _____ (Seal)
    KANDISE N THOMAS-HUMPHREY  —Borrower

Date _____      _____ (Seal)
    —Borrower

Date _____      _____ (Seal)
    —Borrower

Date _____      _____ (Seal)
    —Borrower

Date _____      _____ —Borrower

## BORROWER ACKNOWLEDGMENT

State of Virginia    §
County of Chesterfield    §
   §

The foregoing instrument was acknowledged before me 13th May, 2024 [date], by KANDISE N THOMAS-HUMPHREY [name of person acknowledged].

Kyazia Bradshaw
Notary Signature
Notary Public, State of Virginia
My Commission Expires: July 31, 2024

KYAZIA BRADSHAW
NOTARY PUBLIC
REGISTRATION # 7886994
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
JULY 31, 2024

Loan No.: 0848130522

Servbank, SB  _____          05-30-2024 _____
            –Lender                                                   -Date

By: _____
Greg Vigil #1207327
Its: Vice President

## LENDER ACKNOWLEDGMENT

State of Arizona     §
                              §
County of Maricopa   §

The foregoing instrument was acknowledged before me this __May 30th__, 2024 [date],
by __Greg Vigil__, __Vice President__ [name of
officer or agent, title of officer or agent] of Servbank, SB

, on behalf of said entity.



Gonzalo Vilchis
Notary Public
Maricopa County, Arizona
My Comm. Expires 01-06-27
Commission No. 641431

Notary Signature
Notary Public, State of Arizona

My Commission Expires: 01-06-2027

ACKNOWLEDGMENT (VIRGINIA)                                                                      Page 6 of 6

EXHIBIT "A"

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, LYING AND BEING IN THE COUNTY OF PRINCE GEORGE, VIRGINIA, SHOWN AND DESIGNATED AS LOT 2, BLOCK 13, SECTION 7, ON SUBDIVISION PLAT OF BEECHWOOD MANOR, RECORDED IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF PRINCE GEORGE COUNTY, VIRGINIA, IN PLAT BOOK 16, PAGES 38-41, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY.

BEING THE SAME PROPERTY CONVEYED TO KANDISE N. THOMAS -HUMPHREY BY DEED FROM JAMES M. CRUSOE AND DEBRA D. CRUSOE, DATED JUNE 28, 2001, AND RECORDED HEREWITH BUT IMMEDIATELY PRIOR TO THIS INSTRUMENT.

Tax ID #:        05A(07)13-002-0

EXHIBIT "A"

Loan No.: 0848130522

Exhibit B

# BANKRUPTCY DISCLOSURE ADDENDUM

THIS BANKRUPTCY DISCLOSURE ADDENDUM ("Addendum") is made this 19th day of April, 2024, and is incorporated into and shall be deemed to amend and supplement the Agreement of the same date, given by the Borrower which modifies Borrower's Note and Security Instrument to Lender, and covers the Property.

In addition to the covenants and agreements made in the Agreement, Borrower and Lender covenant and agree as follows:

1. **Borrower has filed for a Chapter 13 bankruptcy and, Lender's final approval of the Loan Modification Agreement is contingent upon approval of the Agreement by the bankruptcy court, if required.**
2. **AFTER** execution of the Agreement, the bankruptcy court may award the Borrower a Chapter 13 bankruptcy discharge.
3. Borrower understands and acknowledges that Borrower has had an opportunity to consult an attorney of Borrower's own choosing before Borrower executed the Agreement and this Addendum, and Borrower has either consulted with an attorney or has declined the opportunity to consult with an attorney.

Except as otherwise specifically provided in this Addendum, the terms of the Agreement will remain unchanged and in full effect.

_5/13/2024_                                   _/s/ [signature]_ (Seal)
Date                                                KANDISE N THOMAS-HUMPHREY    -Borrower

_____                      _____ (Seal)
Date                                                                              -Borrower

_____                      _____ (Seal)
Date                                                                              -Borrower

_____                      _____ (Seal)
Date                                                                              -Borrower

BANKRUPTCY DISCLOSURE ADDENDUM                                Page 1 of 2
CHAPTER 13 ACTIVE BANKRUPTCY

Loan No.: 0848130522

Servbank, SB
—Lender

05-30-2024
-Date

By: _____

Its: Vice President

```
              INSTRUMENT 240002058
       RECORDED IN THE CLERK'S OFFICE OF
          PRINCE GEORGE CIRCUIT COURT ON
           AUGUST 16, 2024 AT 01:16 PM
              JOYCE B. JACKSON, CLERK
                  RECORDED BY: RMO
```

BANKRUPTCY DISCLOSURE ADDENDUM
CHAPTER 13 ACTIVE BANKRUPTCY

Page 2 of 2