**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**In re:**

**KANDISE NADINE LUCAS**
**FKA KANDISE THOMAS-HUMPHREY**
**DBA ADVOCATES FOR EQUITY IN SCHOOLS,**

**DEBTOR.**

**CHAPTER 13**

**CASE NO. 20-33177-FJS**

**SERVBANK, SB,**

**MOVANT,**

**vs.**

**KANDISE NADINE LUCAS**
**and CARL M. BATES, TRUSTEE,**

**RESPONDENTS.**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY (REAL PROPERTY LOCATED AT 10906 SASSAFRAS DRIVE, HOPEWELL, VA 23860)

**NOTICE**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

**TO: KANDISE NADINE LUCAS, DEBTOR**
**CARL M. BATES, TRUSTEE**

**IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT. UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.**

**IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.**

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON AUGUST 13, 2025 AT 11:00 AM AT THE U.S. BANKRUPTCY COURT, KENNEY/SANTORO/KINDRED-COURTROOM, 701 EAST BROAD STREET, RM. 5000, RICHMOND, VA.**

D. Carol Sasser, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 28422
448 Viking Drive
Suite 350
Virginia Beach, VA 23452
(757) 490-9284
File No. 88774

Servbank, SB ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of **10906 Sassafras Drive, Hopewell, VA 23860** (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose. In further support of this Motion, Movant respectfully states:

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157 and §1334 and 11 U.S.C. §362(d), and this matter is a core proceeding.

2. A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on July 23, 2020.

3. A Chapter 13 Plan was confirmed on June 4, 2021.

4. The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $88,301.00 (the "Note"). A copy of the Note is attached hereto as Exhibit A.

5. Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust. The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Prince George, Virginia. A copy of the recorded Deed of Trust is attached hereto as Exhibit B.

6. The legal description of the Property is:

> **ALL that certain lot, piece or parcel of land with all improvements thereon and appurtenances thereto belonging, lying and being in the County of Prince George, Virginia, shown and designated as Lot 2, Block 13, Section 7, on Subdivision Plat of Beechwood Manor, recorded in the Clerk's Office of the Circuit Court of Prince George County, Virginia, in Plat Book 16, pages 38-41, to which plat reference is hereby made for a more particular description of the property.**
>
> **BEING the same property conveyed to Kandise N. Thomas-Humphrey by deed from James M. Crusoe and Debra D. Crusoe, dated June 28, 2001, and recorded herewith but immediately prior to this instrument.**

7. As of June 6, 2025, the unpaid principal balance due is $39,579.33 and the approximate outstanding amount of Obligations less any partial payments or suspense balance is $39,983.37.

8. The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note as of June 6, 2025:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 3 | 04/01/2025 | 06/01/2025 | $512.87 | $1,538.61 |
| Less post-petition partial payments (suspense balance): | | | | ($313.52) |
| | | | Total: | $1,225.09 |

9. As of June 6, 2025, the total post-petition arrearage/delinquency is $1,225.09, consisting of (i) the foregoing total of post-petition payments in the amount of $1,225.09, plus (ii) the following fees:

| Fee Description | Amount |
|---|---|
| N/A | $0.00 |

10. In addition, reasonable attorney fees and court filings costs not to exceed $749.00 will be incurred for representation on this matter.

11. A post-petition payment history is attached hereto as Exhibit 1.

12. The estimated value of the Property is $201,500.00. The basis for such valuation is: Tax Assessment, a copy of which is attached hereto as Exhibit C.

13. Cause exists for relief from the automatic stay for the following reasons:

i. Movant's interest in the Property is not adequately protected.

ii. Post-Petition payments required by the confirmed plan have not been made to Movant.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1. Relief from the stay for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3. For such other relief as the Court deems proper.

Dated: July 3, 2025

SERVBANK, SB

By: **/s/ D. Carol Sasser**
***Eric D. White,*** Esquire, Bar No. 21346

***D. Carol Sasser***, Esquire, Bar No. 28422
***Kim R. Gershen,*** Esquire, Bar No. 41467
448 Viking Drive, Suite 350
Virginia Beach, VA 23452
***Daniel J. Pesachowitz,*** Esquire, Bar No. 74295
6100 Executive Blvd., Suite 400
Rockville, MD 20852
Samuel I. White, P.C.
Tel: (757) 490-9284
Fax: (757) 490-8143
dsasser@siwpc.com

CERTIFICATE OF SERVICE

I certify that on July 3, 2025, the foregoing Motion was served via CM/ECF on Carl M. Bates, Trustee, and Kimberly Alice Chandler, Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Kandise Nadine Lucas, Debtor, 514 East Williamsburg Road, Sandston, VA 23150.

**/s/ D. Carol Sasser**
D. Carol Sasser, Esquire
Samuel I. White, P.C.

Exhibit A

Commonwealth of Virginia

# NOTE

FHA Case No.
[redacted]

June 29th, 2001
[Date]

[redacted]

10906 SASSAFRAS DRIVE ~~PRINCE GEORGE~~, VA ~~23875~~

[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Cendant Mortgage Corporation

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of Eighty-Eight Thousand Three Hundred One Dollars and Zero Cents

Dollars (U.S. $ 88,301.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Seven and Three Eighths percent ( 7.375 %) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on August 1st , 2001 . Any principal and interest remaining on the first day of July , 2031 , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at 3000 Leadenhall Road Mount Laurel, NJ 08054 or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $609.88 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Represents Redacted Information

Original

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4.00 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

[signature] (Seal)
Kandise N Thomas-Humphrey -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

PAY TO THE ORDER OF
PHH Mortgage Corp FKA Cendant Mortgage Corp
WITHOUT RECOURSE
_______________ (Seal) -Borrower

[signature]
Kelly A. Richards, Assistant Vice President
Bishops Gate Residential Mortgage Trust
_______________ (Seal) -Borrower

PAY TO THE ORDER OF
BISHOPS GATE RESIDENTIAL MORTGAGE TRUST
3000 LEADENHALL ROAD
P.O. BOX 5449
MT. LAUREL, NJ 08054
_______________ (Seal) -Borrower

WITHOUT RECOURSE
[signature]
CENDANT MORTGAGE CORPORATION
KELLY RICHARDS, ASSISTANT VICE-PRESIDENT
_______________ (Seal) -Borrower

This is to certify that this is the Note described in and secured by a Deed of Trust dated June 29th, 2001, on the Property located in PRINCE GEORGE, Virginia.

My Commission Expires: 1/31/2004 [signature]
Notary Public



Original

# Allonge to Note

Loan Number [redacted]

Borrower: KANDISE N THOMAS-HUMPHREY

Property Address:
10906 SASSAFRAS DR
HOPEWELL VA 23860

Loan Amount: $88,301.00
Closing Date: 06/29/2001

Pay to the order of:

Without Recourse

Katherine Rainey
Assistant Vice President
PHH Mortgage Corporation fka Cendant Mortgage Corporation
Prepared by: Raineyk

Exhibit B

FILE TO: TRINITY TITLE AGENCY, L.L.C.
603 N. 6th AVENUE
HOPEWELL, VA 23860

000149

VOL. 0100 3337
6/29/01

Return To:
Cendant Mortgage Corporation
2001 Bishops Gate Blvd. Mount Laurel, NJ 08054

Tax Map Reference #: [redacted]

RPC/Parcel ID #:

Prepared by: Maria Montano, Cendant Mortgage

[Space Above This Line For Recording Data]

Commonwealth of Virginia

# DEED OF TRUST

FHA Case No. [redacted]

Loan #: [redacted]

THIS DEED OF TRUST ("Security Instrument") is made on June 29th, 2001 .
The Grantor is Kandise N Thomas-Humphrey, AN UNMARRIED PERSON

("Borrower"). The trustee is Samuel White , a resident of the Commonwealth of Virginia, whose full residence or business address is 130 Business Park Drive, Virginia Beach, VA 23462 , and , a resident of the Commonwealth of Virginia, whose full residence or business address is trustees (any one of whom may act and who are referred to as "Trustee"). The beneficiary is Cendant Mortgage Corporation , which is organized and existing under the laws of New Jersey , and whose address is 3000 Leadenhall Road Mount Laurel, NJ 08054 ("Lender"). Borrower owes Lender the principal sum of Eighty-Eight Thousand Three Hundred One Dollars and Zero Cents Dollars (U.S. $88,301.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on July 1st, 2031 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this

Original

Represents Redacted Information

000130

Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in PRINCE GEORGE , Virginia:

which has the address of 10906 SASSAFRAS DRIVE 23860 [Street]
~~PRINCE GEORGE~~ Hopewell [City], Virginia ~~23875~~ [Zip Code] ("Property Address");



TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR



Original

Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.

Initials:



Original

000152

Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

Initials: [signature]



Original

000153

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint

Initials:



Original

000154

and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Initials: [signature]



Original

000155

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of** 5.00 **% of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

- [ ] Condominium Rider
- [ ] Growing Equity Rider
- [ ] Other [specify]
- [ ] Planned Unit Development Rider
- [ ] Graduated Payment Rider

Initials: [signature]



Original

000156

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

______________________ (Seal) Kandise N Thomas-Humphrey -Borrower

______________________ (Seal) -Borrower

______________________ (Seal) -Borrower ______________________ (Seal) -Borrower

______________________ (Seal) -Borrower ______________________ (Seal) -Borrower

______________________ (Seal) -Borrower ______________________ (Seal) -Borrower

COMMONWEALTH OF VIRGINIA, PRINCE GEORGE County, ss: City of Hopewell

The foregoing instrument was acknowledged before me this June 29th, 2001 by , Kandise N Thomas-Humphrey

My Commission Expires: 1/31/2004

______________________ Notary Public



Original

## *EXHIBIT A - LEGAL DESCRIPTION*

ALL that certain lot, piece or parcel of land with all improvements thereon and appurtenances thereto belonging, lying and being in the County of Prince George, Virginia, shown and designated as Lot 2, Block 13, Section 7, on Subdivision Plat of Beechwood Manor, recorded in the Clerk's Office of the Circuit Court of Prince George County, Virginia, in Plat Book 16, pages 38-41, to which plat reference is hereby made for a more particular description of the property.

BEING the same property conveyed to Kandise N. Thomas-Humphrey by deed from James M. Crusoe and Debra D. Crusoe, dated June 28, 2001, and recorded herewith but immediately prior to this instrument.

INSTRUMENT [redacted]
RECORDED IN THE CLERK'S OFFICE OF
PRINCE GEORGE ON
JUNE 29, 2001 AT 01:55PM
BISHOP KNOTT, CLERK
BY: [signature] (DC)

# VIRGINIA LAND RECORD COVER SHEET

Commonwealth of Virginia VA. CODE §§ 17.1-223, -227.1, -249

## FORM A – COVER SHEET CONTENT

Instrument Date: 4/19/2024

Instrument Type: DTM

Number of Parcels: 1 Number of Pages: 9

[ ] City [X] County PRINCE GEORGE COURT
CIRCUIT COURT

240002058

Tax Exempt? VIRGINIA/FEDERAL CODE SECTION

[ ] Grantor:

[ ] Grantee:

(Area Above Reserved For Deed Stamp Only)

Business/Name

1 Grantor: THOMAS-HUMPHREY, KANDISE N

Grantor:

1 X Grantee: SERVBANK, SB

Grantee:

Grantee Address

Name: SERVBANK, SB

Address: 3138 E ELWOOD ST, STE 200

City: PHOENIX State: AZ Zip Code: 85034

Consideration: $39,887.88 Existing Debt: $0.00 Actual Value/Assumed: $88,301.00

*PRIOR INSTRUMENT UNDER § 58.1-803(D):*

Original Principal: $88,301.00 Fair Market Value Increase: $0.00

Original Book No.: Original Page No.: Original Instrument No.: 010003337

Prior Recording At: [ ] City [X] County PRINCE GEORGE Percentage In This Jurisdiction: 100%

Book Number: Page Number: Instrument Number: 010003337

Parcel Identification Number/Tax Map Number: [REDACTED]

Short Property Description: LOT 2, BLOCK 13, SEC 7, BEECHWOOD MANOR S/D
PRINCE GEORGE CO

Current Property Address: 10906 SASSAFRAS DR

City: HOPEWELL State: VA Zip Code: 23860

Instrument Prepared By: RUTH RUHL, P.C. Recording Paid By: RUTH RUHL, P.C.

Recording Returned To: RUTH RUHL, P.C.

Address: 12700 PARK CENTRAL DRIVE, SUITE 850

City: DALLAS State: TX Zip Code: 75251


© Copyright 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

Represents Redacted Information

Cover Sheet A

**TAX MAP NO.:**[redacted]

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

**Prepared By:**
RUTH RUHL, P.C. and
Co-Counsel, M. Richard Epps, P.C.

**The maker of this instrument hereby certifies that the recording tax on hereon is derived in accordance with Section 58.1-803(D) or 58.1-809 of the Code of Virginia (1950) as amended.**

[redacted]ace Above This Line For Recording Data]

Loan N[redacted]
Investo[redacted]

FHA Case No[redacted]

# LOAN MODIFICATION AGREEMENT

**(Providing for Fixed Interest Rate)**

This Loan Modification Agreement ("Agreement"), made this 19th day of April, 2024, between KANDISE N THOMAS-HUMPHREY, AN UNMARRIED PERSON ("Borrower/Grantor") and *Servbank, SB ("Lender/Grantee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated June 29th, 2001, recorded June 29th, 2001, and recorded in Book/Liber N/A, Page N/A, Instrument No. 010003337, of the Official Records of PRINCE GEORGE County, Virginia, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 10906 SASSAFRAS DR, HOPEWELL, Virginia 23860,

**The original loan amount was $88,301.00. The existing principal balance is $34,117.86. $5,770.02 will be added to the existing principal balance resulting in a new modified loan amount of $39,887.88.**

**The amount which is subject to mortgage registry tax is $0.00.**

Abbreviated Legal Description: LOT 2, BLOCK 13, SEC 7, BEECHWOOD MANOR S/D, PRINCE GEORGE CO

Loan No: 

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of July 1st, 2024, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $39,887.88, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.875%, from June 1st, 2024. Borrower promises to make monthly payments of principal and interest of U.S. $262.03, beginning on the 1st day of July, 2024, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 6.875% will remain in effect until principal and interest are paid in full. If on June 1st, 2054, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

Loan No.: [REDACTED]

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

6. If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in

Loan N

accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Loan No.: [REDACTED]

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

5/13/2024
Date

(Seal)
KANDISE N THOMAS-HUMPHREY –Borrower

Date

(Seal)
–Borrower

Date

(Seal)
–Borrower

Date

(Seal)
–Borrower

Date

– Borrower

## BORROWER ACKNOWLEDGMENT

State of Virginia §
County of Chesterfield §
§

The foregoing instrument was acknowledged before me 13th May, 2024 *[date]*, by KANDISE N THOMAS-HUMPHREY *[name of person acknowledged]*.

Kyazia Bradshaw
Notary Signature
Notary Public, State of Virginia
My Commission Expires: July 31, 2024

KYAZIA BRADSHAW
NOTARY PUBLIC
REGISTRATION # 7886994
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
JULY 31, 2024

Loan No [redacted]

Servbank, SB –Lender

05-30-2024 -Date

By: Greg Vigil #12072?7

Its: Vice President

## LENDER ACKNOWLEDGMENT

State of Arizona §
§
County of Maricopa §

The foregoing instrument was acknowledged before me this May 30th, 2024 *[date]*, by Greg Vigil, Vice President *[name of officer or agent, title of officer or agent]* of Servbank, SB

, on behalf of said entity.

Gonzalo Vilchis
Notary Public
Maricopa County, Arizona
My Comm. Expires 01-06-27
Commission No. 641431

Gonzalo Vilchis
Notary Signature
Notary Public, State of Arizona

My Commission Expires: 01-06-2027

**EXHIBIT "A"**

*ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, LYING AND BEING IN THE COUNTY OF PRINCE GEORGE, VIRGINIA, SHOWN AND DESIGNATED AS LOT 2, BLOCK 13, SECTION 7, ON SUBDIVISION PLAT OF BEECHWOOD MANOR, RECORDED IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF PRINCE GEORGE COUNTY, VIRGINIA, IN PLAT BOOK 16, PAGES 38-41, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY.*

*BEING THE SAME PROPERTY CONVEYED TO KANDISE N. THOMAS -HUMPHREY BY DEED FROM JAMES M. CRUSOE AND DEBRA D. CRUSOE, DATED JUNE 28, 2001, AND RECORDED HEREWITH BUT IMMEDIATELY PRIOR TO THIS INSTRUMENT.*

Tax ID #: [redacted]

Exhibit B

Loan No.[redacted]

# BANKRUPTCY DISCLOSURE ADDENDUM

THIS BANKRUPTCY DISCLOSURE ADDENDUM ("Addendum") is made this 19th day of April, 2024, and is incorporated into and shall be deemed to amend and supplement the Agreement of the same date, given by the Borrower which modifies Borrower's Note and Security Instrument to Lender, and covers the Property.

In addition to the covenants and agreements made in the Agreement, Borrower and Lender covenant and agree as follows:

1. **Borrower has filed for a Chapter 13 bankruptcy and, Lender's final approval of the Loan Modification Agreement is contingent upon approval of the Agreement by the bankruptcy court, if required.**
2. **AFTER** execution of the Agreement, the bankruptcy court may award the Borrower a Chapter 13 bankruptcy discharge.
3. Borrower understands and acknowledges that Borrower has had an opportunity to consult an attorney of Borrower's own choosing before Borrower executed the Agreement and this Addendum, and Borrower has either consulted with an attorney or has declined the opportunity to consult with an attorney.

Except as otherwise specifically provided in this Addendum, ~~the terms of~~ the Agreement will remain unchanged and in full effect.

5/13/2024 [signature] (Seal)
Date KANDISE N THOMAS-HUMPHREY -Borrower

_______________ _______________(Seal)
Date -Borrower

_______________ _______________(Seal)
Date -Borrower

_______________ _______________(Seal)
Date -Borrower

Loan No. [redacted]

Servbank, SB –Lender

05-30-2024 -Date

By: [signature]

Its: Vice President

INSTRUMENT 240002058
RECORDED IN THE CLERK'S OFFICE OF
PRINCE GEORGE CIRCUIT COURT ON
AUGUST 16, 2024 AT 01:16 PM
JOYCE B. JACKSON, CLERK
RECORDED BY: RMO

# VIRGINIA LAND RECORD COVER SHEET
## FORM A – COVER SHEET CONTENT

Instrument Date: 02/15/2024
Instrument Type: ASGMT
Number of Parcels: Number of Pages: 1
[ ] City [X] County
PRINCE GEORGE

TAX EXEMPT? VIRGINA/FEDERAL LAW
[ ] Grantor:
[ ] Grantee:
Consideration: $88,301.00
Existing Debt: $0.00
Actual Value/Assumed: $0.00

*PRIOR INSTRUMENT UNDER § 58.1-803(D)*
Original Principal: $0.00
Fair Market Value Increase: $0.00
Original Book Number: Original Page Number: Original Instrument Number:

*(Area Above Reserved For Deed Stamp Only)*

Prior Recording At: [ ] City [X] County
PRINCE GEORGE Percentage In This Jurisdiction: 100%

BUSINESS / NAME
1 [X] Grantor: NATIONSTAR MORTGAGE LLC
[ ] Grantor:
1 [X] grantee: ALLIED FIRST BANK
[ ] grantee:

GRANTEE ADDRESS:
Name: ALLIED FIRST BANK
Address:
City: State: Zip Code:
Book Number: Page Number: Instrument Number:
Parcel Identification Number (PIN): Tax Map Number:
Short Property Description: ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING,
Current Property Address:
City: HOPEWELL State: VA Zip Code: 23860
Instrument Prepared By: First American Mortgage Solutions Recording Paid By: First American Mortgage Solutions
Recording Returned To: First American Mortgage Solutions
Address:
City: Idaho Falls State: ID Zip Code:


Copyright © 2014 Office if the Executive Secretary, Supreme Court of Virginia. All rights reserved.

Represents Redacted Information

**VIRGINIA**
COUNTY/TOWN OF **PRINCE GEORGE**

TAX MAP NO.

**[THOMAS HUMPHRE]**
PREPARED BY: **FIRST AMERICAN MORTGAGE SOLUTIONS**
WHEN RECORDED MAIL TO: **FIRST AMERICAN MORTGAGE SOLUTIONS. 1795 INTERNATIONAL WAY. IDAHO FALLS. ID 83402.** PH. **208-528-9895**

# NOTICE OF ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **NATIONSTAR MORTGAGE LLC**, located at **8950 CYPRESS WATERS BLVD, COPPELL, TX 75019**, Assignor, without recourse, representation or warranty, expressed or implied does hereby grant, assign, transfer, and set over unto **ALLIED FIRST BANK, SB DBA SERVBANK**, located at **3138 E. ELWOOD ST, PHOENIX, AZ 85034**, Assignee, its successors and assigns, all of Assignor's interest in that certain Deed of Trust described below:

Name of Trustor(s): **KANDISE N THOMAS-HUMPHREY, AN UNMARRIED PERSON**
Trustor Surname: **THOMAS-HUMPHREY**
Name of Original Beneficiary(s): **CENDANT MORTGAGE CORPORATION**
Name of Original Trustee(s): **SAMUEL WHITE**
Trustee Surname: **WHITE**

Said Deed of Trust dated **JUNE 29, 2001**, in the amount of **$88,301.00** and recorded on **JUNE 29, 2001** at Page **000149** as Instrument No [redacted] in the Land Records of the Circuit Court for the **COUNTY** of **PRINCE GEORGE**, State of **VIRGINIA**, described herein as follows:

**AS DESCRIBED IN SAID DEED OF TRUST REFERRED TO HEREIN.**

Property Address: **10906 SASSAFRAS DR, HOPEWELL, VA 23860**
TOGETHER WITH ALL RIGHTS ACCRUED OR TO ACCRUE TO SAID DEED OF TRUST.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on on **FEBRUARY 15, 2024**.
**NATIONSTAR MORTGAGE LLC, BY ITS ATTORNEY IN FACT LYNX WHOLE LOAN AQUISITION LLC, BY ITS ATTORNEY IN FACT ALLIED FIRST BANK, SB DBA SERVBANK**

**AMY COLVIN, VICE PRESIDENT**

STATE OF **IDAHO** COUNTY OF **BONNEVILLE** ) ss.

On **FEBRUARY 15, 2024**, before me, **KATIE OLSON**, personally appeared **AMY COLVIN** known to me to be the **VICE PRESIDENT** of **ALLIED FIRST BANK, SB DBA SERVBANK AS ATTORNEY-IN-FACT FOR NATIONSTAR MORTGAGE LLC** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**KATIE OLSON (COMMISSION EXP. 02/26/2027)**
NOTARY PUBLIC

KATIE OLSON
Notary Public - State of Idaho
Commission Number [redacted]
My Commission Expires Feb 26, 2027

INSTRUMENT [redacted]
RECORDED IN THE CLERK'S OFFICE OF
PRINCE GEORGE CIRCUIT COURT ON
FEBRUARY 20, 2024 AT 12:59 PM
JOYCE B. JACKSON, CLERK
RECORDED BY: BLW



**MERS PHONE: 1-888-679-6377**

VOL. 0100 [redacted] 5922

11|13|01

000129

Record and Return to:
Cendant Mortgage Corporation
3000 Leadenhall Road, P.O. Box 5449
Mt. Laurel, NJ 08054
ID Source: 83 Tier: RI

Loan # [redacted]
Name: Thomas-Humphrey
State of: VA
County of: PRINCE GEORGE

## Assignment of Deed of Trust or Mortgage

Know all men by these presents, that *Bishops Gate Residential Mortgage Trust, 1 Rodney Sq. 1st Fl, 920 King St., Wilmington, DE 19801, a Statutory Business Trust existing under the laws of the state of Delaware for valuable consideration, the receipt of which hereby acknowledged, does hereby grant, bargain, sell, assign and transfer to:

Cendant Mortgage Corporation
3000 Leadenhall Road
Mt. Laurel, NJ 08054

"John Bursen & William Savage as Trustee for Cendant Mortgage"

That certain Promissory Note, and Deed of Trust or Mortgage described as follows:
Note and Deed of Trust or Mortgage Dated: 06/29/01
Amount: $ 88,301.00 Executed by: Kandise N Thomas-Humphrey
Clerks file or instrument no: [redacted] Recorded Date: 6/29/01
Book: Volume: [redacted] Page: [redacted]
Address: 10906 SASSAFRAS DR HOPEWELL VA 23860
Describing land therein as described in Deed of Trust/Mortgage referred to herein.

Together with the Note therein or referred to, the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust or Mortgage.

Dated: 07/09/2001
Witnessed by: [signature]
Deanne Roberts

*Bishops Gate Residential Mortgage Trust
1 Rodney Sq. 1st Fl, 920 King St.
Wilmington, DE 19801

By: [signature]
Kelly Richards
Administrative Agent
Cendant Mortgage Corp

Prepared by: [signature]
Sangita Dave
*Cendant Mortgage Corp.
3000 Leadenhall Road
Mt. Laurel, NJ 08054

By: [signature]
Tremayne Wood
Administrative Agent
Cendant Mortgage Corp.

State of New Jersey, County of Burlington
On 07/09/2001, before me, the undersigned, a notary public in and for said State and County, personally appeared Kelly Richards and Tremayne Wood personally known to me or proved to me on the basis of satisfactory evidence to be Administrative Agents of the trust that executed the within instrument, on behalf of the trust therein named, and acknowledged to me that such trust executed the within instrument pursuant to its legal authority, witness my hand and official seal in the state and county last aforesaid.

[signature]
Notary Public

Rita Calendo
Notary Public of New Jersey
My Commission Expires: 11/30/2003

RITA CALENDO
Notary Public State of New Jersey
My Commission Expires November 30, 2003

INSTRUMENT [redacted]
RECORDED IN THE CLERK'S OFFICE OF
PRINCE GEORGE ON
NOVEMBER 13, 2001 AT 04:22PM
BISHOP KNOTT, CLERK

BY: ______________________________ (DC)

VOL. 0100 [redacted] 5921

11|13|01

000128

Record and Return to:
Cendant Mortgage Corporation
3000 Leadenhall Road, P.O. Box 5449
Mt. Laurel, NJ 08054
Source ID: 83 Tier: RI

Loan # [redacted]
Name: Thomas-Humphrey
State of: VA
County of: PRINCE GEORGE

## Assignment of Deed of Trust or Mortgage

Know all men by these presence, that *Cendant Mortgage Corporation, 3000 Leadenhall Road,, Mt. Laurel, NJ 08054, a Corporation existing under the laws of the State of New Jersey, for valuable consideration, the receipt of which hereby acknowledged, does hereby grant, bargain, sell, assign and transfer to:

Bishops Gate Residential Mortgage Trust
1 Rodney Square, 1st Floor
920 King Street
Wilmington, DE 19801

"John Bursen & William Savage as Trustee for Cendant Mortgage"

That certain Promissory Note, and Deed of Trust or Mortgage described as follows:
Note and Deed of Trust or Mortgage Dated: 06/29/01
Amount: $88,301.00 Executed by: Kandise N Thomas-Humphrey

Clerks file or instrument no: [redacted] Recorded Date: 6/29/01
Book: Volume [redacted] Page: [redacted]
Address: 10906 SASSAFRAS DR HOPEWELL VA 23860
Describing land therein as described in Deed of Trust/Mortgage referred to herein.

Together with the Note therein or referred to, the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust or Mortgage.

Dated: 07/09/2001

Witnessed by: [signature]
Deanne Roberts

Prepared by: [signature]
Sangita Dave
*Cendant Mortgage Corporation
3000 Leadenhall Road
Mt. Laurel, NJ 08054

* Cendant Mortgage Corporation
3000 Leadenhall Road
Mt. Laurel, NJ 08054

By: [signature]
Kelly Richards
Assistant Vice President

By: [signature]
Tremayne Wood
Assistant Secretary

State of New Jersey, County of Burlington
On 07/09/2001, before me, the undersigned, a notary public in and for said State and County, personally appeared Kelly Richards and Tremayne Wood personally known to me or proved to me on the basis of satisfactory evidence to be Assistant Vice President and Assistant Secretary of the corporation that executed the within instrument, on behalf of the corporation therein named, and acknowledged to me that such corporation executed the instrument pursuant to the its by-laws or resolution of its Board of Directors. Witness my hand and official seal in the State and County last aforesaid.

[signature]
Notary Public

Rita Calendo
Notary Public of New Jersey
My Commission Expires: 11/30/2003

RITA CALENDO
Notary Public State of New Jersey
My Commission Expires November 30, 2003

INSTRUMENT [redacted]
RECORDED IN THE CLERK'S OFFICE OF
PRINCE GEORGE ON
NOVEMBER 13, 2001 AT 04:20PM
BISHOP KNOTT, CLERK

BY: ______________ (DC)

1500 1205 5\1\2015

000054

This Document Prepared By:
**DOLORES LAURIA**
**PHH MORTGAGE SERVICES**
**ONE MORTGAGE WAY, MAILSTOP DC**
**MOUNT LAUREL, NJ 08054**

When Recorded Mail To:
**FIRST AMERICAN TITLE**
**ATTN: JAVIER TONY VARGAS**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA 92707**

**Tax Map Number:** [REDACTED]

[Space Above This Line for Recording Data]

# ASSIGNMENT OF DEED OF TRUST

For Value Received, **PHH MORTGAGE CORPORATION**, the undersigned holder of a Deed of Trust (herein "Assignor"), whose address is **1 MORTGAGE WAY, MOUNT LAUREL, NJ 08054**, does hereby grant, sell, assign, transfer and convey, unto **NATIONSTAR MORTGAGE, LLC** (herein "Assignee"), whose address is **8950 CYPRESS WATERS BLVD, COPPELL, TX COPPELL**, all beneficial interest under a certain Deed of Trust made and executed by **KANDISE N THOMAS-HUMPHREY, AN UNMARRIED PERSON** ("Borrower"), to **SAMUEL WHITE** ("Trustee"), upon the following property located at **10906 SASSAFRAS DRIVE, HOPEWELL, VIRGINIA 23860** and situated in **PRINCE GEORGE COUNTY,** State of **VIRGINIA**.

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Such Deed of Trust having been given to secure payment of **$88,301.00** which Deed of Trust is dated **JUNE 29, 2001** and recorded on **JUNE 29, 2001** in **INSTRUMENT NO.** [REDACTED] **BOOK 01003337 PAGE 000149 of the official Records of PRINCE GEORGE COUNTY**, State of **VIRGINIA**, together with all rights accrued or to accrue under such Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.



ORIGINAL

000055

4/22/15
Date

Seal:

PHH MORTGAGE CORPORATION

By: Carol Brown (Signature)
CAROL BROWN
ASSISTANT VICE PRESIDENT

[Space Below This Line for Acknowledgments]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of CALIFORNIA)
County of ORANGE

On 04/22/2015 (Date) before me, Robert Muñoz (here insert name and title of officer) Notary Public, appeared CAROl BROWN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the company upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Robert Munoz
Signature of Notary Public

ROBERT MUNOZ
Commission # [redacted]
Notary Public - California
Orange County
My Comm. Expires Jun 26, 2015

000056

**EXHIBIT A**

**BORROWER(S): KANDISE N THOMAS-HUMPHREY, AN UNMARRIED PERSON**

**LOAN NUMBER:**[redacted]

**LEGAL DESCRIPTION:**

**ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, LYING AND BEING IN THE COUNTY OF PRINCE GEORGE, VIRGINIA, SHOWN AND DESIGNATED AS LOT 2, BLOCK 13, SECTION 7. ON SUBDIVISION PLAT OF BEECHWOOD MANOR, RECORDED IN THE CLERK'S OFFICE OF THE CIRCUIT COURT OF PRINCE GEORGE COUNTY, VIRGINIA, IN PLAT BOOK 16, PAGES 38-41, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF THE PROPERTY.**

**BEING THE CAME PROPERTY CONVEYED TO KANDISE N. THOMAS-HUMPHREY BY DEED FROM JAMES N. CRUSOE AND DEBRA D. CRUSOE, DATED JUNE 28, 2001, AND RECORDED HEREWITH BUT IMMEDIATELY PRIOR TO THIS INSTRUMENT.**

**ALSO KNOWN AS: 10906 SASSAFRAS DRIVE, HOPEWELL, VIRGINIA 23860**

INSTRUMENT [redacted]
RECORDED IN THE CLERK'S OFFICE OF
PRINCE GEORGE ON
MAY 1, 2015 AT 02:05PM
BISHOP KNOTT, CLERK
RECORDED BY: JBK

OFFICIAL RECEIPT
PRINCE GEORGE CIRCUIT COURT
DEED RECEIPT

```
DATE: 05/01/15 TIME: 14:05:25 ACCOUNT: [redacted]          RECEIPT [redacted]
CASHIER: JBK   REG: PY32  TYPE: ASGMT    PAYMENT:  FULL PAYMENT
INSTRUMENT   : [redacted] BOOK:          PAGE:       RECORDED: 05/01/15 AT 14:05
GRANTOR: PHH MORTGAGE CORPORATION                            EX: N LOC: CO
GRANTEE: WHITE PC SAMUEL I TR                                EX: N PCT: 100%
 AND ADDRESS :  ,   .
RECEIVED  OF : FIRST AMERICAN TITLE INS CO
  CHECK:       $21.00 [redacted]
DESCRIPTION 1:                                                 PAGES:   0 OP:  0
          2:                                                   NAMES:   0
CONSIDERATION:             .00  A/VAL:           .00  MAP:
                                                      PIN:
301  DEEDS                        14.50  145  VSLF                        1.50
106  TECHNOLOGY TRST FND           5.00
                                                      TENDERED    :      21.00
                                                      AMOUNT PAID:       21.00
                                                      CHANGE AMT :         .00
```

CLERK OF COURT: BISHOP KNOTT

PAYOR'S COPY
RECEIPT COPY 1 OF 2

Exhibit C

# 10906 SASSAFRAS DR

**Location** 10906 SASSAFRAS DR

**City, State, Zip** N PRINCE GEORGE, VA 23860

**Mblu** [redacted]

**Parcel #** [redacted]

**Owner** THOMAS-HUMPHREY KANDISE N

**School Dist**

**Municipality** Beechwood Manor S

**Total Market Value** $201,500

**Appraisal** $201,500

**PID** 384

**Building Count** 1

**Legal Description** LT:2 BK:13 SEC:7; SUB:BEECHWOOD MANOR; ACRES:0.34;

**Lot Type** Primary

**Topography**

**Utility**

**Location**

**Street/Road**

**Assessing District** Beechwood Manor S

**District** :

## Current Value

| Appraisal | | | | | | |
|---|---|---|---|---|---|---|
| Valuation Year | Building | Extra Features | Outbuildings | Land | Appraised Total | Land Use Amount Deferred |
| 2026 | $171,100 | $0 | $0 | $30,400 | $201,500 | $0 |

| Assessment | | | | | |
|---|---|---|---|---|---|
| Valuation Year | Building | Extra Features | Outbuildings | Land | Total |
| 2026 | $171,100 | $0 | $0 | $30,400 | $201,500 |

## Parcel Addresses

| Additional Addresses | | |
|---|---|---|
| Address | City, State Zip | Type |
| 10906 SASSAFRAS DR | N PRINCE GEORGE, VA 23860 | Secondary |

## Owner of Record

**Owner** THOMAS-HUMPHREY KANDISE N
**Co-Owner**
**Address** 514 E WILLIAMSBURG RD
SANDSTON, VA 23150-1703

**Sale Price** $89,000
**Certificate**
**Book** 01
**Page** 3336
**Sale Date** 06/29/2001
**Instrument** 00

Represents Redacted Information

## Ownership History

| Ownership History | | | | | | |
|---|---|---|---|---|---|---|
| **Owners** | **Sale Price** | **Certificate** | **Instrument** | **Sale Date** | **Book** | **Page** |
| | $89,000 | | 00 | 06/29/2001 | 01 | 3336 |
| | $75,400 | | 00 | 05/03/1988 | 306 | 222 |
| | $67,950 | | 00 | 06/30/1986 | 286 | 198 |
| | $520,730 | | 00 | 12/17/1984 | 273 | 643 |
| | $0 | | 00 | 01/01/1776 | 0 | 0 |

## Building Information

### Building 1 : Section 1

**Year Built:** 1985
**Living Area:** 1,484

| Building Attributes | |
|---|---|
| **Field** | **Description** |
| Style | Tri/Quad Level |
| Model | Residential |
| Grade | D+ |
| Stories | 0 |
| Story Config | Split Level |
| Occupancy | 1 |
| Extra Living Units | 0 |
| Roof Type | Gable |
| Roof Cover | Composition/Tab |
| Construction Type | Wood Frame |
| Exterior Wall 1 | Vinyl |
| Exterior Wall 2 | |
| Heat System | Heat Pump |
| Heat Fuel | Other |
| A/C Type | Central Air |
| Interior Wall 1 | Drywall |
| Interior Wall 2 | |
| Floor Type | Sub and Joists |
| Interior Floor 1 | |
| Interior Floor 2 | |
| Total Room(s) | 8 |
| Bedroom(s) | 3 |
| Full Bath(s) | 2 |
| Half Bath(s) | 0 |
| Extra Fixture(s) | 0 |
| Extra Kitchen(s) | 0 |
| Fireplace(s) | 0 |

### Building Photo



(https://images.vgsi.com/photos/PrinceGeorgeVAPhotos

### Building Layout




(ParcelSketch.ashx?pid

| Building Sub-Areas (sq ft) | | | Legend |
|---|---|---|---|
| **Code** | **Description** | **Gross Area** | **Living Area** |

| Foundation | Concrete Block |
|---|---|
| Basement | None |
| Crawl Code | |
| Bsmt Finish Area | 0 |
| Bsmt Gar Area | 0 |
| Attic Code | None |
| Attic Finish Area | 0 |
| Sub Class | 002 suburban - 1 - 19 ac |
| Rel Desirability | 1.00 |
| SFLA | 1534 |
| Parking | Asphalt driveway |
| MH Length | 0 |
| MH Width | 0 |
| MFG Home | No |
| Walk Out Bsmt | No |

| FFL | First Floor | 912 | 912 |
|---|---|---|---|
| FBMW | Finished Basement - W/O | 528 | 528 |
| OVH | Overhang | 44 | 44 |
| CNPAT | Concrete Patio | 264 | 0 |
| CRAWL | Crawl | 384 | 0 |
| STOOP | Stoop | 22 | 0 |
| | | 2,154 | 1,484 |

### Extra Features

| Extra Features | Legend |
|---|---|
| No Data for Extra Features | |

### Parcel Information

**Use Code** 100
**Description** Urban Residential (Water & Sewer)
**Deeded Acres**

### Land

#### Land Use

**Use Code** 100
**Description** Urban Residential (Water & Sewer)
**Zone**
**Neighborhood** 04005
**Alt Land Appr** No
**Category**

#### Land Line Valuation

**Units** 0.34
**Acreage** 0.3400
**Frontage**
**Depth**
**Total Market Land** $30,400
**Appraised Value** $30,400

### Outbuildings

| Outbuildings | Legend |
|---|---|
| No Data for Outbuildings | |

### Valuation History

| Appraisal | | | | | |
|---|---|---|---|---|---|
| Valuation Year | Building | Extra Features | Outbuildings | Land | Appraised Total |
| 2025 | $125,100 | $0 | $0 | $48,300 | $173,400 |
| 2024 | $125,100 | $0 | $0 | $48,300 | $173,400 |

| Assessment | | | | | |
|---|---|---|---|---|---|
| **Valuation Year** | **Building** | **Extra Features** | **Outbuildings** | **Land** | **Total** |
| 2025 | $125,100 | $0 | $0 | $48,300 | $173,400 |
| 2024 | $125,100 | $0 | $0 | $48,300 | $173,400 |

(c) 2025 Vision Government Solutions, Inc. All rights reserved.

| Debtor: | KANDISE NADINE LUCAS |
|---|---|
| Case No.: | 20-33177 |

**PAYMENTS RECEIVED**

| | |
|---|---|
| Loan Status as of: | 6/6/2025 |
| Initial Due Date: | 7/1/2024 |

| Date Posted | Amount Received | Due Date | Amount Due | NSF/Late Charges/Other | Paid Over/Short | Description |
|---|---|---|---|---|---|---|
| | | 7/1/2024 | $ 512.87 | | $ (512.87) | Payment Accrued |
| 7/22/2024 | $ 550.00 | | | | $ 550.00 | Transaction Date |
| | | 8/1/2024 | $ 512.87 | | $ (512.87) | Payment Accrued |
| | | 9/1/2024 | $ 512.87 | | $ (512.87) | Payment Accrued |
| 9/24/2024 | $ 1,200.00 | | | | $ 1,200.00 | Transaction Date |
| | | 10/1/2024 | $ 512.87 | | $ (512.87) | Payment Accrued |
| | | 11/1/2024 | $ 512.87 | | $ (512.87) | Payment Accrued |
| | | 12/1/2024 | $ 512.87 | | $ (512.87) | Payment Accrued |
| 12/18/2024 | $ 600.00 | | | | $ 600.00 | Transaction Date |
| | | 1/1/2025 | $ 512.87 | | $ (512.87) | Payment Accrued |
| 1/16/2025 | $ 512.87 | | | | $ 512.87 | Transaction Date |
| 1/20/2025 | $ 512.87 | | | | $ 512.87 | Transaction Date |
| 1/23/2025 | $ (512.87) | | | | $ (512.87) | Payment Reversed |
| | | 2/1/2025 | $ 512.87 | | $ (512.87) | Payment Accrued |
| 2/14/2025 | $ 1,040.74 | | | | $ 1,040.74 | Transaction Date |
| | | 3/1/2025 | $ 512.87 | | $ (512.87) | Payment Accrued |
| | | 4/1/2025 | $ 512.87 | | $ (512.87) | Payment Accrued |
| | | 5/1/2025 | $ 512.87 | | $ (512.87) | Payment Accrued |
| 5/22/2025 | $ 1,025.74 | | | | $ 1,025.74 | Transaction Date |
| | | 6/1/2025 | $ 512.87 | | $ (512.87) | Payment Accrued |
| **Total:** | **$ 4,929.35** | | **$ 6,154.44** | | **$ (1,225.09)** | |

| Delinquent Payments | | Days Delinquent: | 66 | |
|---|---|---|---|---|
| Month Due | P&I Due | Escrow Due | Stip Due | Total Due |
| 4/1/2025 | $ 262.03 | $ 250.84 | $ - | $ 512.87 |
| 5/1/2025 | $ 262.03 | $ 250.84 | $ - | $ 512.87 |
| 6/1/2025 | $ 262.03 | $ 250.84 | $ - | $ 512.87 |
| Delinquency | | | | $ 1,538.61 |
| Less Suspense | | | | $ 313.52 |
| Total Delinquency | | | | $ 1,225.09 |

| SOR | |
|---|---|
| 4/1/2025 | 313.52 |